**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**STACY S. SNYDER,**

                              **Plaintiff,**

    **vs.**                                              **7:14-cv-01292
(MAD)**

**COMMISSIONER OF SOCIAL
SECURITY,**

                              **Defendant.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**CONBOY, MCKAY, BACHMAN &**          **LAWRENCE D. HASSELER, ESQ.**
**KENDALL, LLP**
307 State Street
Carthage, New York 13619
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **FERGUS KAISER, AUSA**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Stacy S. Snyder ("Plaintiff") commenced this action on October 22, 2014, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

### II. BACKGROUND

Plaintiff's date of birth is January 10, 1974, and she was thirty-seven years old on January 15, 2011, the alleged onset of her disability. *See* Dkt. No. 9, Administrative Transcript ("T."), at 130. Plaintiff completed school through ninth grade, and she does not have any difficulty with reading, writing, or completing simple math functions. *See id.* at 41. Plaintiff obtained a general equivalency diploma in 1997, and she has a certification to operate a forklift. *See id.* at 43. Otherwise, she has not completed any further specialized job training or vocational schooling. *See id.* at 195. At the time of the hearing, Plaintiff's medical treatment was being covered by medicaid, but she was not receiving any outside income. *See id.* at 58. Plaintiff's family was financially supporting her. *See id.* at 59. Plaintiff claims that she is unable to work because she suffers from bilateral trigeminal neuralgia, fibromyalgia, depression, bulging disc in neck, severe anxiety, and temporomandibular joint (TMJ) disorder. *See id.* at 194.

Plaintiff's work history contains past relevant work, including positions as a forklift driver in the years 1997, 2000, and 2009 through 2010, an auditor in the years 1998 through 2000 and 2002 through 2004, a cook in the years 1998 through 1999, 2002 through 2004, 2007 and 2009, a convenient store clerk in the year 2001, and a warehouse checker the years 2010 through 2011. In her position as a forklift driver, Plaintiff described that she empties, cleans, and refills trucks with soft drink product and cleans the warehouse. *See id.* at 219. In that position, she was required to lift twenty-five pounds frequently and up to fifty pounds. *See id.* She was not required to supervise anyone in this position, but she described herself as a "lead worker." *Id.* Plaintiff spent half of her time sitting and half of her time on her feet. *See id.* at 44.

Plaintiff experienced a sudden onset of facial pain in May 2010, and, as a result, she stopped working full time in January 2011, ceasing work altogether in May 2011. *See id.* at 45. The pain can be triggered by exposure the cold or heat, according to Plaintiff. *See id.* at 44.

2

Plaintiff testified that she was diagnosed with trigeminal neuralgia. *See id.* at 45. The facial pain is her most debilitating impairment, according to Plaintiff's testimony. *See id.* at 49. The pain is described as episodic. *See id.* Plaintiff also complains of pain in her neck as a result of a bulging disc and fibromyalgia, the fibromyalgia condition causes her legs and shoulders to feel restless every day. *See id.* at 50-51.

Plaintiff has received medical treatment for neuralgic pain from neurologists and pain management specialists. *See id.* at 47-48, 347-418, 526-39, 775-79, 822-31, 858-71, 879-915, 951-66, 974-76. Plaintiff was discharged from one pain management provider because she violated the narcotics agreement by using marijuana and taking narcotic drugs from outside sources. *See id.* at 322, 326-27. At the hearing, Plaintiff testified that she did not believe that going to emergency departments to obtain narcotic medications was in violation of that contract. *See id.* at 48. However, the medical records clearly establish that Plaintiff had been advised that this was a violation, and, after several warnings, that pain clinic refused to prescribe medication for Plaintiff. *See id.* at 312-13, 320-22, 326-28.

In addition to Plaintiff's physical impairments, Plaintiff testified that she suffers from anxiety. *See id.* at 55. The anxiety can cause Plaintiff to shake and tremble and cause symptoms of breathlessness. *See id.* During an anxiety attack, Plaintiff feels claustrophobic, and these attacks last for five minutes. *See id.* at 214. As a result, Plaintiff is "not a people person" and shopping or having people over is difficult for her. *Id.* Plaintiff testified that, despite these impairmens, she is not prevented from completing household chores, such as doing the laundry, cleaning, and cooking. *See id.* at 56. Further, Plaintiff does not have any problems paying attention or completing tasks, and she does not have any trouble remembering things. *See id.* at 210-11. Plaintiff completed the New York State Office of Temporary and Disability Assistance

3

report as part of her application for benefits, and she responded that she does not have any difficulty with her personal care or remembering to take her medication. *See id.* at 204-05. Plaintiff reported that she is capable of preparing her meals, and she does not require any assistance in carrying out household chores with the exception of yard work because she is exposed to the cold or sunlight. *See id.* at 206. Plaintiff is able to go out alone, and she shops two times per week. *See id.* at 207, 214. Her endurance and ability to walk is only limited if the light or cold environment triggers facial pain. *See id.* at 210.

Plaintiff is able to pay bills, count change, and manage her money. *See id.* She is able to watch television and socialize with others on a daily basis. *See id.* at 208, 213. Plaintiff visits with friends at their homes twice a week, and she does not have any problems getting along with family, friends, neighbors, or others. *See id.* at 208. Plaintiff reported that she is not able to spend as much time outdoors because of her impairments, but she testified that she continues to enjoy fishing and camping. *See id.* at 57. Her impairments effect her abilities to lift and climb stairs but do not effect standing, walking, sitting, kneeling, squatting, reaching, using her hands, or talking. *See id.* at 208-09.

On January 18, 2011, Plaintiff protectively filed an application for a period of disability and DIB. *See id.* at 71, 130-33. Thereafter, Plaintiff also protectively filed an application for SSI on August 30, 2011. *See id.* at 70, 137-43. Both applications were initially denied. *See id.* at 70-71. Plaintiff requested a hearing by an administrative law judge. *See id.* at 80-81. A video-conference hearing was conducted on April 11, 2013 before Administrative Law Judge F. Patrick Flanagan (the "ALJ"). *See id.* at 35-69. The ALJ issued an unfavorable decision to Plaintiff on July 18, 2013. *See id.* at 10-31. The ALJ made the following determinations: (1) Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013; (2)

4

Plaintiff has not engaged in substantial gainful activity since January 15, 2011, the onset of the alleged disability; (3) Plaintiff's severe impairments include possible trigeminal neuralgia, cervical disc disease, fibromyalgia, a temporomandibular joint disorder (TMJ), headaches, obesity, bilateral carpal tunnel syndrome, generalized anxiety disorder, and major depressive disorder; (4) Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "listed impairment(s)"); (5) Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404.1567(c) but should avoid stressful work situations or fast-paced production line environment; (6) Plaintiff is capable of performing past relevant work as a forklift driver; and, in the alternative, (7) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See id.* Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from January 15, 2011 through the date of the ALJ's decision. *See id.* at 26.

Plaintiff timely filed a request for a review of the ALJ's decision with the Appeals Council, *see id.* at 5-9, and, in a notice dated October 8, 2014, the request was denied rendering the ALJ's decision the Commissioner's final decision, *see id.* at 1-4. Plaintiff then commenced this action for judicial review of the denial of her claim by the filing of a complaint on October 22, 2014. *See* Dkt. No. 1. Both parties have moved for judgment on the pleadings. *See* Dkt. Nos. 13, 14. The Court orders that the Commissioner's decision is affirmed.

### III. DISCUSSION

**A. Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). The Court must examine the administrative transcript to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotation marks omitted).

If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and the court is not permitted to substitute its analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("[The court] would be derelict in its duties if we simply paid lip service to this rule, while shaping [the court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Analysis**

*1. Five-step analysis*

For purposes of both DIB and SSI, a person is disabled when she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating these disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the [Social Security Administration] bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (internal citations omitted)).

### *2. Treating Physician Rule*

Plaintiff contends that the ALJ failed to properly apply the treating physician rule when evaluating the medical source statement from Dr. Robert Martinucci, M.D., and Elizabeth Ann Davis, LCSW-R, CASAC. *See* Dkt. No. 13 at 19-24. Dr. Martinucci's medical opinions about the severity of Plaintiff's impairments and symptoms can be entitled to "controlling weight" when the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 404.1527(a)(2); *Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) ("Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the [plaintiff's] impairment when the opinion is well-

7

supported by medical findings and not inconsistent with other substantial evidence.") (citations omitted); *Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007) (noting that inconsistent evidence can be in the form of opinions of other medical experts).

If an ALJ refuses to assign a plaintiff's treating physician's opinion controlling weight, he or she must state a good reason for that determination. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). The "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted). The regulations list factors the ALJ should consider when evaluating the appropriate weight to assign to medical opinions, including a treating source's opinion that is not assigned controlling weight. *See* 20 C.F.R. § 404.1527(c). The factors include (1) the frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). A treating physician's opinion can be contradicted by other substantial evidence, such as opinions of other medical experts. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007).

Dr. Martinucci completed a medical source statements on June 8, 2012. *See* T. at 872-78. This medical source statement was based upon his medical treatment of Plaintiff from January 6, 2012 through June 8, 2012. *See id.* at 872. Dr. Martinucci opined that Plaintiff suffers from

8

diffuse body pain and depression and diagnoses Plaintiff with cervicalgia, trigeminal neuralgia, and fibromyalgia, but he indicates that no testing, such as radiology studies, have been ordered by him to confirm or make these diagnoses. *See id.* Dr. Martinucci opines that Plaintiff (1) can never lift or carry any weight at all, (2) can sit, stand, or walk for only thirty minutes at one time, (3) can sit for a total of four hours each work day, (4) can stand for a total of three hours per work day, (5) can walk for a total of one hour per work day, (6) can never reach overhead or in any other direction, (7) can never operate foot controls, (8) can never climb stairs, ramps, ladders, or scaffolds, (9) can never balance, stoop, kneel, crouch, or crawl, (10) can never be exposed to unprotected heights, moving mechanical parts, humidity or wetness, dust, odors, fumes, pulmonary irritants, extreme cold, or extreme heat, (11) can never operate a motor vehicle, (12) cannot perform activities such as shopping, (13) cannot travel without a companion for assistance, and (14) cannot climb a few stairs. *See id.* at 873-74.

The ALJ stated that Dr. Martinucci's assessment of plaintiff's limitations are not supported by the evidence in the record and contradicted by Plaintiff's testimony about her daily activities and abilities. *See id.* The ALJ found that Dr. Martinucci's opinions are based only on Plaintiff's subjective complaints without specific clinical signs or laboratory findings to support the limitations. *See id.* at 22. The ALJ acknowledged that Dr. Martinucci was a treating physician, and, although the ALJ does not specifically state that Dr. Martinucci was a specialist in pain medicine, the ALJ specifically discusses the treatment records in the decision. The Court finds that the ALJ evaluated Dr. Martinucci's opinion in light of the regulatory factors.

The Court finds that the majority of the medical source statement completed by Dr. Martinucci is inconsistent with the evidence in this record. Plaintiff testified and reported that, despite her impairments, Plaintiff is able to do laundry, clean, cook, and complete household

9

chores without any assistance. *See id.* at 56, 206. Plaintiff is a licensed driver and continues to drive a motor vehicle several times a week. *See id.* at 41. Plaintiff is able to go out alone, and she shops two times per week. *See id.* at 207, 214. Her ability to walk is limited only if environmental factors trigger her facial pain. *See id.* at 210. Although her ability to lift or climb stairs is limited when she becomes light-headed, Plaintiff does not claim that she is unable to climb a few stairs or lift any weight. *See id.* at 208. Moreover, Plaintiff stated that her impairments do not effect her abilities to stand, walk, sit, kneel, squat, reach, or use her hands. *See id.*

In addition to the conflicting evidence of Plaintiff's testimony and statements, Dr. Sandra Boehlert, M.D., who examined Plaintiff in consultation on February 9, 2012, provided a medical source statement that Plaintiff has mild to moderate exertional limitations due to chronic pain. *See id.* at 832-36. Dr. Boehlert found that Plaintiff has a normal gait, can walk on her heels and toes without difficulty, can perform a full squat, can rise from a chair without difficulty, and could get on and off the exam table without assistance. *See id.* at 833. Upon examination, Dr. Boehlert found that Plaintiff had full flexion including lateral flexion, full extension, and full rotary movement in her cervical and lumbar spine without any signs of scoliosis, kyphosis, or other abnormality in the thoracic spine. *See id.* at 834. Plaintiff exhibited a full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles, bilaterally. *See id.* Dr. Boehlert did not find any redness, heat, or swelling in Plaintiff's joints, which were stable and non-tender. *See id.* Plaintiff exhibited full strength in her upper and lower extremities with no bruising, clubbing, swelling, or muscle atrophy. *See id.* Plaintiff had full grip strength with intact finger and hand dexterity. *See id.*

The Court has also reviewed the treatment records from Plaintiff's treating otolaryngology-head and neck specialist, both treating neurologists, prior pain management specialist, and primary care providers. *See id.* at 276-80, 289-90, 311-28, 342-43, 347-75, 493-501, 526-33, 404-05, 781-83, 892-97, 902-04, 907-08, 911-13. These records do not contain evidence that supports the extreme limitations opined upon by Dr. Martinucci.

Plaintiff's contention that the ALJ's only recourse was to reach out to Dr. Martinucci to fill the gaps in the evidence is misguided, and the Court is not persuaded. Of course, the ALJ has a general duty to develop the administrative record, but he "is required to affirmatively [] seek out additional evidence only where there are 'obvious gaps' in the administrative record. *Eusepi v. Colvin*, 595 Fed. Appx. 7, 9 (2d Cir. 2014) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79, 79 n.5 (2d Cir. 1999)). The ALJ's assessment that Dr. Martinucci's opinions are inconsistent with other evidence in the record is not the equivalent of stating that there are gaps or missing evidence in the administrative record. Although Plaintiff makes this argument, she does not identify any gaps in the medical evidence or missing information. Upon review of the record, the Court does not find that additional evidence was needed or that essential evidence from Dr. Martinucci was missing.

Accordingly, the Court finds that the ALJ properly applied the treating physician rule to Dr. Martinucci's opinions contained in the medical source statement. Dr. Martinucci's medical opinions are inconsistent with substantial evidence in the case record, including Plaintiff's testimony and other medical evidence. Dr. Martinucci stated that he did not use any laboratory diagnostic techniques, and the Court does not find any documentation of medically acceptable clinical techniques in Dr. Martinucci's treatment records that support his opinions in the medical source statement.

11

In regard to Plaintiff's contention that the ALJ did not properly apply the treating physician rule to the opinion of Ms. Davis, *see* Dkt. No. 13 at 22-23, the Court finds that Ms. Davis is not a medically acceptable source, as that term is defined in the regulations. Under the Regulations, only "acceptable medical sources . . . can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006) (stating that "[m]aking a distinction between 'acceptable medical sources' and medical sources who are not 'acceptable medical sources' facilitates the application of our rules on establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source").

Acceptable medical sources include licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologist, but licensed social workers are not included in that classification. *See* 20 C.F.R. § 416.913(a); *Saxon v. Astrue*, 781 F. Supp. 2d 92, 103-04 (N.D.N.Y. 2011). Licensed social workers are classified in the regulations as "Other sources." 20 C.F.R. §§ 404.1513(d)(3), 416.913(d); *see also* SSR 06-03p, 2006 WL 2329939, at *2. "Information from these 'other sources' cannot establish the existence of a medically determinable impairment," which must come from an acceptable medical source. *See* SSR 06-03p, 2006 WL 2329939, at *2.

The opinions from these other sources may be considered in determining the severity of an impairment and an individual's ability to function. *See id.* However, an opinion, classified as an other source, is not entitled to the presumption of controlling weight that is accorded to the opinion from a treating medical physician. *See Diaz v. Shalala*, 59 F.3d 307, 314 n.8 (2d Cir. 1995); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983). When evaluating this evidence, the ALJ should consider the same factors set forth in 20 C.F.R. §§ 404.1527(c),

416.927(c) for the evaluation of opinions from treating physicians.  *See* SSR 06-03p, 2006 WL 2329939, at * 4-5.  The ALJ applied these factors when he noted the short length of the treatment relationship and the conclusory nature of Ms. Davis' opinion.  *See* T. at 24.

Moreover, a treatment relationship where the provider has only examined a claimant twice is not entitled to the "extra weight" of a treating physician.  *Mongeur*, 722 F.2d at 1039 n.2 (explaining that the provider had not yet established a continuity of treatment in that relationship which would place him or her in the unique position to make an accurate diagnosis).  Here, Ms. Davis disclosed that her opinion is based upon two meetings with Plaintiff.  *See* T. at 977.  Even if Ms. Davis were an acceptable medical source, her opinion would not be entitled to a presumption of controlling weight based upon the two meetings.  *See Mongeur*, 722 F.2d at 1039 n.2.  Further, Ms. Davis' opinion that Plaintiff is unable to work is a disability conclusion, not a medical opinion.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  The inability to work is a determination that is reserved for the Commissioner, and Ms. Davis' opinion about Plaintiff's inability to work is not given any significance.  *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).  Ms. Davis' letter offered conclusions based on diagnoses without any evidence of Plaintiff's functional abilities.  Accordingly, the Court finds that the ALJ properly evaluated Ms. Davis' opinion under the regulations.

### *3. Residual Functional Capacity*

Before the fourth step in the disability analysis, the ALJ determines a plaintiff's RFC, which is what a plaintiff can still do despite his or her limitations.  *See* SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996). The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairments(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to

do work-related physical and mental activities." *Id.* The assessment takes into consideration the limiting effects of all of a plaintiff's impairments, severe and non-severe, and the determination sets forth the most a plaintiff can do. *See* 20 C.F.R. §§ 404.1545(a)(1), (e); 416.945(a)(1), (e).

Plaintiff argues that her RFC, as determined by the ALJ, is not supported by substantial evidence because it is contrary to Dr. Martinucci's medical source statement. *See* Dkt. No. 13 at 24. As stated herein, the ALJ properly assessed Dr. Martinucci's opinions under the treating physician rule and, accordingly, the Court finds this contention is without merit. Next, Plaintiff argues that the ALJ did not take into account Plaintiff's non-exertional impairments and, therefore is not supported by substantial evidence. *See id.* at 25-26. Plaintiff relies on, and directs the Court to, the letter from Ms. Davis, *see* T. at 977, but, as discussed, the ALJ properly evaluated and assigned weight to Ms. Davis' opinion that Plaintiff is unable to work. Plaintiff also relies on a letter from physician assistant Lisa Trickey, PA-C, which states "Stacy is to be out of work indefinitely. Her follow up appointment is in September." *Id.* at 568. Like the opinion offered in Ms. Davis' letter, Ms. Trickey's assessment that Plaintiff is unable to work is a determination that is reserved for the Commissioner, and cannot be usurped by a medical provider. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

With regard to Plaintiff's assertions that the RFC does not take her non-exertional impairments into consideration, such as anxiety and depressive disorder and, therefore, is not supported by substantial evidence, the Court disagrees. The ALJ found that Plaintiff has the ability to understand, remember, and carry out simple and complex instructions, maintain attention and concentration for tasks, attend regularly to a routine, maintain a schedule, make appropriate decisions, relate to supervisors, coworkers, and the public. *See* T. at 19. He also

14

found that Plaintiff should avoid stressful work situations involving negotiation, confrontation, or responsibility for the safety of others and fast paced production line work. *See id.*

Plaintiff testified or reported that she is able to socialize with others on a daily basis, and she visits with friends outside of her home. *See id.* at 208. She does not have difficulty getting along with her family, friends, neighbors, or others. *See id.* Plaintiff does not have a problem paying attention, and she is able to complete tasks. *See id.* at 210. She does not have any impairment that affects her speech, and she is able to follow spoken and written instructions. *See id.* at 209-10. The examining psychologist, Dr. Dennis M. Noia, Ph.D., found that Plaintiff's attention, concentration, memory skills, and intellectual functioning were intact. *See id.* at 788. Further, Dr. Noia reported that Plaintiff's mood was depressed, but that her thoughts and speech were intelligible and fluent with adequate expressive and receptive language. *See id.* at 788. It was Dr. Noia's opinion that Plaintiff was capable of performing simple and complex tasks, understanding and following instructions, and learning new tasks. *See id.* at 789. Plaintiff advised Dr. Noia that she spends her days doing chores, resting, and watching television, and Dr. Noia opined that Plaintiff was capable of regularly keeping a schedule. *See id.*

Within his decision, the ALJ reviewed and cited evidence including Plaintiff's statements to providers, medical opinions, Plaintiff's work and social history, and Plaintiff's testimony, prior to making a determination on Plaintiff's RFC. *See id.* at 19-25. Having found that the ALJ properly weighed the medical evidence, the Court finds that there is substantial evidence in the administrative record to support the nonexertional limitations in Plaintiff's RFC.

### *4. Past Relevant Work*

Plaintiff argues that the ALJ's determination of Plaintiff's RFC was not supported by substantial evidence, and, therefore, it is an error to find that she is capable of performing past

work based upon that RFC. *See* Dkt. No. 13 at 27-28. At the fourth step of the disability analysis, Plaintiff bears the burden of proving that she is not able to return to her previous specific job as she performed it or that she is not able to perform her past relevant work as it is generally performed. *See Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003). Here, the ALJ determined that Plaintiff can perform her past relevant work as she previously performed it. *See* T. at 25. He based this finding on Plaintiff's testimony describing her most recent job as a forklift driver. *See id.* Plaintiff testified that, in her job as a forklift driver, she was required her to check drivers in and out, clean the warehouse, clean trucks, and lift 20 to 25 pounds frequently. *See id.* at 43-44. The ALJ found that Plaintiff's RFC permitted her to perform the physical and mental demands of that work. *See id.* at 25.

As discussed, the Court finds that the RFC determined by the ALJ is supported by substantial evidence. Accordingly, the Court does not find merit in Plaintiff's first contention that she is not able to work at a medium exertional level. Plaintiff also argues that the requirements of her past relevant work conflict with Dr. Martinucci's medical source statement. *See* Dkt. No. 13 at 27. Also, as discussed, the Court found that the ALJ properly assigned no weight to Dr. Martinucci's opinion, and, therefore, this contention is without a basis. Next, Plaintiff argues that, in 2010, she had been advised "not to operate a vehicle or heavy machinery while under the influence of narcotic medications." Dkt. No. 13 at 27. In support, Plaintiff cites to a medical visit from October 2010. *See* T. at 321. At the time of that visit, Plaintiff was in the process of a medication change to reduce and discontinue gabapentin, to discontinue hydrocodone, and to start MS Contin. *See id.* Her medical provider advised "not to drive while under the influence of multiple different neuropathic and narcotic pain medications." *Id.* at 321. Plaintiff has not identified any evidence of ongoing medication change where she is taking multiple neuropathic

medication and multiple narcotic medications at one.  Also, Plaintiff testified and reported that she continues to regularly operate a motor vehicle and drove to the disability hearing.  *See id.* at 41, 207.  Accordingly, Plaintiff has not sustained her burden in demonstrating that she is unable to drive a motor vehicle.

Plaintiff also argues that the finding by the ALJ that she should avoid stressful work situations is contrary to her past relevant work because, based on her testimony, she had responsibility for the safety of others.  *See* Dkt. No. 13 at 27-28.  Plaintiff described her job duties at the disability hearing.  *See* T. at 43.  The Court's review of this testimony does not reveal that Plaintiff described any role or function where she was responsible for the safety of others.  Further, Plaintiff testified that she left her position due to her physical pain.  *See id.* at 44.  Plaintiff does not provide any evidence that she was not capable of performing her work due to the stress invoke by being responsible for the safety of others.  Accordingly the Court does not find that Plaintiff's RFC is contrary to her past relevant work.

### *5. Vocational Expert*

In the alternative, the ALJ proceeded to step five of the disability analysis and found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy.  *See id.* at 26.  Plaintiff contends that it was error for the ALJ to rely on the vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2008), (the "guidelines") instead of obtaining the testimony of a vocational expert.  *See* Dkt. No. 13 at 28.

The Second Circuit has stated that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."  *Roma v. Astrue*, 468 Fed. Appx. 16, 21 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)).  A vocational expert's

17

testimony, or other similar evidence, is required "when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Id.* (quoting *Bapp*, 802 F.2d at 603). "A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Bapp*, 802 F.2d at 606)).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, *4 (1985). The Second Circuit has found that a plaintiff's mental condition does not limit her ability to perform unskilled work where she is able to carry out "simple instructions, deal[] with work changes, and respond[] to supervision" because her nonexertional limitations do not result in an additional loss of work capacity. *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013); *see also Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010).

In this case, the ALJ stated that the opinion of a vocational expert was not necessary because the Social Security Rulings provided sufficient guidance for determining whether there were a significant number of jobs in the national economy that a person, such as Plaintiff, could perform. *See* T. at 26. The Court finds that the ALJ's determination that Plaintiff retains the ability to meet the basic mental demands of unskilled work was supported by substantial evidence. Accordingly, the ALJ did not err by not obtain a vocational expert's opinion.

18

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: March 15, 2016
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge